Filed 1/24/24  In re L.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re L.B., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D082698 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4088B) |
| v. | |
| D.S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

D.S. (Mother) appeals the juvenile court's dispositional order denying her reunification services for L.B.  Mother's sole contention on appeal is that substantial evidence did not support the court's finding that she "failed to subsequently make a reasonable effort to treat the problems" that led to L.B.'s half-sibling's removal.[1]  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The dependency proceedings before us commenced in June 2023, when L.B. was three years old.  The San Diego Health and Human Services Agency (Agency) filed a Welfare and Institutions Code[2] section 300, subdivision (b), petition for L.B. based on a May 2023 incident in which Mother became "volatile" and "erratic," and "threw [L.B.] into the passenger seat" of her car. (§ 300, subd. (b).)  Mother threatened to "end it all" and then left, with L.B. unattended and inadequately supervised.  At the contested July 2023 dispositional hearing, the court denied Mother reunification services because the court previously terminated her parental rights for L.B.'s half-sibling and she failed to make a reasonable effort to treat the substance abuse issues that led to the half-sibling's removal.  (§ 361.5, subds. (b)(10) & (b)(11).)

A.      *L.B.'s Half-sibling's Dependency Matter*

L.B.'s older half-sibling was removed from Mother's custody in October 2016.  At that time, Mother admitted to a six-year addiction to controlled substances.  Specifically, she admitted to being a daily user of methamphetamine.  Her history with substances included the use of

---

[1]      M.B. (Father) is not party to this appeal.

[2]      All further undesignated statutory references are to the Welfare and Institutions Code.

methamphetamine, heroin, marijuana, and prescription Xanax. During the preceding six-year period, specifically during 2014, Mother denied drug use, indicating "she ha[d] not used in years." L.B.'s half-sibling was eventually detained with C.H. (Caregiver).

The juvenile court offered Mother reunification services. During that time, Mother was arrested for violations of Health and Safety Code sections 11377, subdivision (a) (possession of a controlled substance) and 11364, subdivision (a) (possession of unlawful paraphernalia). Although she participated in both an inpatient treatment program and outpatient services, Mother "made no progress towards achieving her case plan." She often did not show up to drug tests and her reported Narcotics Anonymous attendance could not be verified. Caregiver reported Mother "likes to tell social workers that she goes . . . a treatment program" but that she quits. The juvenile court terminated Mother's parental rights to L.B.'s half-sibling in January 2018; Caregiver adopted the child.

B.    *L.B.'s Dependency Matter*

Given the nature of this appeal, we start with a brief overview of events that occurred since Mother's parental rights to L.B.'s half-sibling were terminated. We first note Mother has not provided information to the Agency to suggest that she has treated her substance use since her parental rights were terminated.

In May 2019, during Mother's pregnancy with L.B., she tested positive for methamphetamine and THC (tetrahydrocannabinol is the principal psychoactive constituent of cannabis). At the time, Mother admitted to previous methamphetamine use but denied use of both marijuana and methamphetamine while she was pregnant. Father confirmed both he and Mother used methamphetamine together. In the weeks before L.B.'s birth,

3

Mother entered an inpatient drug treatment facility. At the time of L.B.'s birth, Mother again tested positive for THC and the child was monitored for rapid breathing that "[m]ay or may not be the result of drug use." Shortly after L.B.'s birth, Mother was discharged from the drug treatment facility for bringing in marijuana.

Within a month of giving birth to L.B. and less than a week after leaving the drug treatment facility, Mother passed out while driving and hit a parked car. L.B. was with Mother in the car, which subsequently burst into flames. Paramedics and police believed she was "under the influence of something," though she passed a field sobriety test. She declined to be interviewed by the Agency, suggesting she did not need services. When she eventually submitted to a urinalysis drug test, her toxicology results were negative. Father told the Agency Mother used methamphetamine following L.B.'s birth.

The following month, in September 2019, the Agency received a report that Mother was, again, using drugs. A maternal aunt confirmed Mother's drug usage and stated she did not know Mother's whereabouts. The Agency was unable to locate Mother or L.B. and closed the matter as inconclusive. Later that month, Father reported that both he and Mother "use meth."

By March 2020, Mother had a warrant for her arrest for not going to inpatient drug rehabilitation; family and friends expressed concern about L.B.'s well-being and Mother's continued drug use. The following year, Mother was arrested in April following a physical fight with a maternal aunt. She was arrested for possessing drug paraphernalia. Again, family and friends described concerns Mother was using "methamphetamine and heroin." A urinalysis was "deemed negative for all substances."

The Agency filed a section 300, subdivision (b), petition for L.B. in June 2023. At the detention hearing, the court ordered voluntary services for Mother and ordered L.B. detained.

Following the May 2023 incident, the maternal grandmother reported that she believed Mother was detoxing from heroin during the incident. Both the maternal grandmother and a friend reported seeing a methamphetamine pipe in Mother's car around the time of the incident. The friend believed Mother was using methamphetamine and heroin. Mother's boyfriend denied Mother was using that day and claimed he had a witness that she was sober. When asked for the witness's name, the boyfriend refused to provide it.

When Mother became volatile and erratic, she left L.B. with the maternal grandmother and did not return to collect L.B. The maternal grandmother brought L.B. to the Caregiver, who then brought L.B. to the Agency 10 days after the May 2023 incident because she was receiving threats from Mother. Caregiver reported that she believed Mother was using drugs, specifically methamphetamine, and that Mother "wanted to go to the facility for treatment." She also reported that this was the fourth time Mother had run away from L.B.

Mother had a history of leaving L.B. with others. She left L.B. with Father's cousin. Mother also began leaving L.B. with a shop owner she met through Father's cousin, for months at a time. Although the shop owner denied seeing Mother under the influence, the shop owner was not certain what Mother does when the shop owner has L.B. Mother is not employed or in school. The shop owner reported that she watched L.B. the four months prior to the May 2023 incident. During that time, Mother would spend one or two days with L.B., then disappear again.

Mother was often unresponsive to the Agency's calls, voice messages, and text messages. When they did talk, Mother reported that she "relapsed on Xanax, not heroin" and stated she wanted to go to a sober living program "because she is homeless." Mother blamed the May 2023 incident on an "emotional issue" and separately on a migraine. Mother agreed to but failed to drug test on June 1, 7, and 8. The Agency made additional drug test requests on June 19, June 30, July 11, July 27, and August 7. Mother has never tested for the Agency.

Mother, however, continued to assert she was available for any drug test the Agency would like her to perform. Although she "denie[d] any substance use, mental health, and needs for treatment," Mother told the Agency she was calling a sober living program for placement.

Mother often arrived late or skipped visits with L.B., and arrived seemingly impaired for both L.B.'s birthday party and other visits.

Mother's counsel was unsuccessful in reaching Mother when contacts were attempted. Mother missed the July 2023 jurisdiction and disposition hearing, asserting she had a flat tire and was then not permitted to enter the courtroom. After the hearing, the Agency urged Mother to avail herself of the substance abuse resources and explained to Mother that missed drug tests are considered positive drug tests. Mother stated she did not want to use the substance abuse resources and left. Mother has not sought support from a substance abuse specialist.

Mother provided no evidence to the juvenile court that she completed a substance abuse program or that she was engaged in voluntary services. Weighing the evidence presented, the court made a true finding on the Agency's petition and bypassed reunification services to Mother. The court

ordered reunification services for Father; in accordance with that order, no section 366.26 hearing has been scheduled.

## DISCUSSION

While it is ordinarily presumed in dependency cases that parents will receive reunification services (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95), the court may bypass reunification services under a variety of circumstances enumerated in section 361.5.  Mother contends the court erred by denying her reunification services because there was no substantial evidence supporting the application of section 361.5, subdivisions (b)(10) and (b)(11).  She argues, specifically, that no one has seen her consuming drugs and discounts witnesses' observations of her behavior.  She cites only to treatment she engaged in while pregnant with L.B. as a reasonable effort to treat her drug addiction.  Notably, Mother was removed from that program for bringing drugs in.  We conclude that Mother's contention is without merit.

Subdivision (b)(10) of section 361.5 provides that reunification services need not be provided when "the court ordered termination of reunification services for any . . . half[-]siblings of the child because the parent or guardian failed to reunify with the . . . half[-]sibling after the . . . half[-]sibling had been removed from that parent . . . pursuant to Section 361" when the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . half[-]sibling."  (§ 361.5, subd. (b)(10).)  Similarly, subdivision (b)(11) provides that reunification services need not be provided when "the parental rights of a parent over any . . . half[-]sibling of the child had been permanently severed" when the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . half[-]sibling."  (§ 361.5, subd. (b)(11).)

We review a dispositional order removing a child from a parent for substantial evidence, " 'keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' " (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.) Here, Mother, as the party challenging the juvenile court's order, has the burden to show there is insufficient evidence to support the court's decision. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.) In applying this standard, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.) We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence. (*Id.* at p. 996.)

We conclude the juvenile court properly applied section 361.5, subdivisions (b)(10) and (b)(11). In 2016, L.B.'s half-sibling was removed from Mother's custody because she abused methamphetamine. During the dependency matter, Mother missed drug testing and was arrested on drug related charges. Mother received reunification services, but she was not successful in reunifying with L.B.'s half-sibling. In 2018, Mother's parental rights were terminated.

Mother did not subsequently make a reasonable effort to treat her drug abuse. While pregnant with L.B., she tested positive for methamphetamines and marijuana; she again tested positive for marijuana at L.B.'s birth. Mother was discharged from a drug program for bringing in drugs. Witnesses report seeing Mother use methamphetamine following L.B.'s birth. Mother's family reported continued concerns about her substance abuse.

8

Mother herself stated she relapsed, though she claimed it was on Xanax instead of illicit street drugs. Mother's erratic and otherwise unexplained behavior resulted in L.B.'s dependency.

While Mother contends she does not presently use substances, she has previously asserted sobriety and later admitted to daily use of methamphetamine. She repeatedly claims she is willing to test for the Agency, yet fails or refuses to do so. She has a history of briefly seeking substance use support before quitting. Nothing in the record before us indicates she has successfully completed any substance use program. We have no certificate of enrollment, certificate of completion, or letter of support from program leaders.

On the record before us, we conclude there is substantial evidence to support the court's finding by clear and convincing evidence that Mother failed to address her substance use issues prior to L.B.'s dependency matter. Because the juvenile court properly concluded that section 361.5, subdivisions (b)(10) and (b)(11) applied, it was precluded from ordering reunification services for Mother unless it found, by clear and convincing evidence, that reunification was in L.B.'s best interests. (§ 361.5, subd. (c)(2).) In light of Mother's untreated drug abuse dating back to at least 2010 and her resulting inability to care for L.B. or her other child, we see no abuse of discretion in the court's failing to find that reunification was in L.B.'s best interests.

9

## DISPOSITION

The dispositional order of August 28, 2023 is affirmed.


DO, J.

WE CONCUR:


IRION, Acting P. J.


BUCHANAN, J.